UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| NEW SCHOONEBEEK DAIRY, LLC, ) | CASE NO. 09-34327-hcd |
| Debtor. ) | Chapter 11 |

## JOINT RESPONSE TO SHOW CAUSE ORDER

On March 17, 2010, this Court issued a Show Cause Order directed to R. William Jonas, Jr. (see document 113). The Show Cause Order directed counsel for the Debtor to show cause why a final agreement with regard to New Schoonebeek Dairy, LLC's Emergency Motion to Use Cash Collateral had not been filed.

In response, R. William Jonas, Jr. and Jay Kennedy, counsel for Rabo Agrifinance, would show the Court that the Final Order on Cash Collateral was in fact filed and entered by the Court on November 20, 2009. A copy of the executed Order is attached hereto as **Exhibit A**.

WHEREFORE, the parties request that the Show Cause Order be discharged and for all other just and proper relief.

Respectfully submitted,

R. William Jonas, Jr. (#5025-71)
HAMMERSCHMIDT, AMARAL & JONAS
137 N. Michigan St.
South Bend, IN 46601
(574) 282-1231

/s/ Jay P. Kennedy
Jay P. Kennedy, Esq.
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
(317) 692-9000

## Certificate of Service

The undersigned hereby certifies that a true and correct copy of the foregoing document was sent to:

Nancy J. Gargula
One Michiana Square Building
Suite 555
100 East Wayne Street
South Bend, IN 46601-2349

Alex Edgar
100 E Wayne Street
One Michiana Square
RM 555
South Bend, IN 46601

Douglas C. Lehman
Douglas C. Lehman Professional Corporation
30 West Canal Street
Wabash, IN 46992

by either first-class mail, postage fully prepaid, or electronic service through the Clerk's ECF System, on this the 19th day of March, 2010.

_____
R. William Jonas, Jr. (5025-71)

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | |
| NEW SCHOONEBEEK DAIRY, LLC, ) | CASE NO. 09-34327-hcd |
| TAX ID/EIN: 61-1409707 ) | Chapter 11 |
| ) | |
| 1858 E. 800S ) | |
| La Fontaine, IN 46940 ) | |
| ) | |
| Debtor ) | |

*kn*

## AGREED FINAL DEBTOR-IN-POSSESSION
## ADEQUATE PROTECTION AND CASH COLLATERAL ORDER

This matter coming on to be heard on *Debtor's Emergency Motion for Order Authorizing Debtor's Use of Cash Collateral* (the "Motion") filed by New Schoonebeek Dairy, LLC ("Schoonebeek"), Debtor herein. In response to the Motion, Rabo Agrifinance, Inc., a secured creditor herein ("Rabo") filed its *Objection to Emergency Motion for Order Authorizing Debtor's Use of Cash Collateral*. Following negotiation between the parties, Schoonebeek and Rabo submit this Agreed Final Order for the Court's consideration. As part of this Agreed Final Order, Schoonebeek and Rabo hereby stipulate and agree as follows:

A. On September 8, 2009 (the "Petition Date"), Schoonebeek filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition"). Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Schoonebeek has retained possession of Schoonebeek's assets and is authorized, as a debtor in possession, to continue the operation and management of the business previously conducted by Schoonebeek.

B. Schoonebeek's business operations include a dairy operation located in Wabash County, Indiana (the "Dairy"). Assets of the Dairy include dairy cattle, offspring of cattle


EXHIBIT A

(collectively, the "Herd"), products of dairy cattle (including milk), feed, equipment, rolling stock, accounts, contract rights and other personal property (collectively, the "Dairy Assets").

C.  As of the Petition Date, Rabo has asserted its first priority secured claim against Schoonebeek and the Dairy Assets in the principal amount of not less than $3,230,392.01 plus interest, and additional fees and expenses (the "Pre-Petition Obligations"), by virtue of, among other things:

   a. A Credit Agreement, dated May 24, 2006, by and between Schoonebeek and Rabo in the original principal amount of $3,134,000.00 (the "Credit Agreement");

   b. An Amended and Restated Credit Agreement, dated July 17, 2007, by and between Schoonebeek and Rabo in the original principal amount of $3,174,400.00 (the "Amended Credit Agreement");

   c. A First Amendment to the Amended Credit Agreement dated May 30, 2008 (the "First Amendment to the Amended Credit Agreement";

   d. A Second Amendment to the Amended Credit Agreement dated March 6, 2009 (the "Second Amendment to Amended Credit Agreement");

   e. A Herd Line of Credit Note, dated July 17, 2007, incorporating the terms of the Amended Credit Agreement, by and between Schoonebeek and Rabo in the original principal amount of $2,678,400.00 (the "Herd Note"); and

   f. An Amended and Restated Working Line Capital Line of Credit Note, incorporating the terms of the Amended Credit Agreement, First Amendment to Amended Credit Agreement and Second Amendment to

2

Amended Credit Agreement, by and between Schoonebeek and Rabo in the original principal amount of $646,000.00 (the "Working Capital Note").

g. The Obligations represented by the Herd Note and the Working Capital Note are collectively referred to hereinafter as the "Loan".

h. The loan documents signed and delivered in connection with the Loan include, without limitation, the following:

   i. The Herd Note;

   ii. The Working Capital Note;

   iii. The Credit Agreement, Amended Credit Agreement and amendments thereto referenced above;

   iv. A Security Agreement, dated May 24, 2006; and

   v. All other documents and agreements signed in connection with the financing arrangements between Rabo and Schoonebeek (collectively, the "Loan Documents").

D. Rabo asserts that the Pre-Petition Obligations are secured by duly perfected first priority security interests and liens (the "Pre-Petition Liens") in certain personal property owned by Schoonebeek including all accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments, deposit accounts, inventory, equipment, fixtures, farm products, general intangibles, other Dairy Assets and related property as defined in the Security Agreement (the Pre-Petition Collateral"), with priority over all liens, claims, and interests of all other persons and entities including Schoonebeek.

3

E. Rabo filed its Proof of Claim in this proceeding on October 14, 2009, the Proof of Claim asserting that Rabo maintained a secured claim against the Debtor in the sum of $3,305,576.10, as of the Petition Date.

F. A Creditors' Committee has been appointed in Schoonebeek's Chapter 11 case.

G. An immediate need exists for Schoonebeek to utilize the Pre-Petition Collateral, and certain proceeds thereof, as contemplated in 11 U.S.C. §363 [including "Cash Collateral" as that term is defined in 11 U.S.C. §363 (a)], pledged to Rabo in order to continue the operation of its business. Without such use of the Pre-Petition Collateral, Schoonebeek will not be able to pay its payroll, payroll expenses and operating expenses and will not be able to obtain required inventory and supplies. As a result, there would be no reasonable prospect that Schoonebeek would be successful in realizing value as a going concern in this Chapter 11 case.

H. Rabo has indicated a willingness to allow use of its Pre-Petition Collateral, but only under the terms and conditions set forth in this Final Order. Schoonebeek believes that, under the circumstances, the following terms and conditions are a fair and reasonable response to Schoonebeek's request for use of the Cash Collateral.

I. Entry of this Final Order will minimize disruption of Schoonebeek as a "going concern", will increase the possibilities for a successful reorganization and is in the best interests of the estate and its creditors.

J. The terms for use of the Pre-Petition Collateral have been negotiated at arms-length and in "good faith" [within the meaning of Section 364(e) of the Bankruptcy Code] by and between Rabo and Schoonebeek. Accordingly, Rabo, in allowing use of its Pre-Petition Collateral pursuant to this Final Order, is entitled to the protection described in Section 364(e) of the Bankruptcy Code.

4

K.  A representative of Schoonebeek is prepared to testify in support of this Agreed Final Order as to:

(1) the negotiations pertaining to this Final Order;

(2) the propriety of the filing of the Petition by Schoonebeek and the necessity for the financing and financial accommodations approved pursuant to this Final Order;

(3) the events leading up to the filing of the Petition by Schoonebeek;

(4) Schoonebeek's need for use of the Pre-Petition Collateral to the extent necessary to avoid immediate and irreparable harm to Schoonebeek's estate, pending a final hearing in accordance with Bankruptcy Rule 4001(c); and

(5) those expenses which must be paid in order to avoid immediate and irreparable harm to Schoonebeek's estate.

The Court being otherwise fully advised in the premises;

IT IS HEREBY ORDERED THAT:

1.  Schoonebeek shall be, and hereby is, authorized to use the Pre-Petition Collateral, including Cash Collateral as that term is defined in 11 U.S.C. §363 (a), on the terms set forth herein:

A.  Schoonebeek may use Cash Collateral, on a daily basis, up to the level of the budgeted expenditures set forth in the Budget attached hereto as **Exhibit A** (the "Budget"). The Cash Collateral shall only be used to fund those expenses set forth in the Budget.

B.  The Loan Documentation is hereby ratified and approved by Schoonebeek, without prejudice to any other party appearing in the case, and shall continue in full force and effect with respect to any Pre-Petition Obligations due to Rabo; <u>provided that</u>, all obligations, commitments or agreements of Rabo contained in the Loan Documentation to provide financing or other financial accommodations to or for the benefit of Schoonebeek are

5

terminated and ceased as of the Petition Date except as specifically set forth herein. The Budget is intended to bind Schoonebeek for the period set forth therein.

C. As past adequate protection for Schoonebeek's use of Rabo's Pre-Petition Collateral, Schoonebeek has paid to Rabo:

i. A portion of the settlement amount paid to Schoonebeek for August, 2009 deliveries to Dairy Farmers of America ("DFA")(the August, 2009 DFA payment in the total approximate amount of $265,000.00 hereinafter referred to as the "August DFA Payment") in the sum of $200,000.00, which sum was applied against the balance due and owing on the above referenced Herd Note.

ii. A portion of the settlement amount payable to Schoonebeek for September, 2009 deliveries to DFA in the sum of $104,534.00.

D. As continuing adequate protection for Schoonebeek's use of Rabo's Pre-Petition Collateral, Schoonebeek shall pay to Rabo or otherwise perform as follows:

i. Commencing on the Petition Date (but giving credit for the amounts paid as referenced in Paragraph 1 (C)(2) above), the sum of sum of $10,000.00 per month, payable from DFA (or any subsequent processor of Schoonebeek's milk) pursuant to a Court ordered direct assignment of milk proceeds, so long as this Order remains in effect, for the adequate protection of Rabo's interest in Schoonebeek's equipment and dairy herd for depreciation and loss of value, which sum is to be applied against the balance due and owing on the above referenced Herd Note, and further provided that Schoonebeek maintain the Post-Petition Herd at the same levels, condition and production level as its Pre-Petition Herd;

ii. Commencing on the Petition Date (but giving credit for the amounts paid as referenced in Paragraph 1 (C)(2) above), the invoiced sum of the amount of the Debtor's

usage of haylage, silage, corn, and other feed-stocks pledged as Collateral to Rabo (the "Feed Collateral"), payable from DFA (or any subsequent processor of Schoonebeek's milk) pursuant to a Court ordered direct assignment of milk proceeds, so long as this Order remains in effect, for the adequate protection of Rabo's interest in the Feed Collateral, which sum is to be applied against the balance due and owing on the above referenced Working Capital Note. In order to calculate this amount, Harry Bekel, on behalf of the Debtor, shall certify to Rabo on the 3rd day following the end of each month, the amount of Feed Collateral utilized during the month, the amount of remaining Feed Collateral, and the Debtor's computation of the Dollar value of the utilized Feed Collateral based upon the Pre-Petition agreed value of the Feed Collateral. The parties agree that it shall be an Event of Default of this Agreed Final Order if the entire amount of Feed Collateral is not utilized by the Debtor on or before May 1, 2010, and/or not fully paid for by May 15, 2010.

iii. Commencing on the Petition Date (but giving credit for the amounts paid as referenced in Paragraph 1 (C)(2) above), Debtor shall pay to Rabo invoiced interest on the indebtedness due to Rabo (the "Post-Petition Interest"), payable from DFA (or any subsequent processor of Schoonebeek's milk) pursuant to a Court ordered direct assignment of milk proceeds. The Post-Petition Interest shall be calculated and invoiced up to November 1, 2009, at the rate set forth in the Loan Documents, and thereafter until the Termination Date of this Order at the rate of One and One-Half Percent (1 ½%) over the Prime Rate.

iv. Commencing on the Petition Date, the Debtor shall spend the sum of $10,833.33 per month to increase in number and quality the Post-Petition Herd.

E. As further adequate protection for Schoonebeek's use of Rabo's Pre-Petition Collateral, all Post-Petition Indebtedness which may from time to time hereafter be owing by

7

Schoonebeek to Rabo, and all other indebtedness which may now or from time to time hereafter be owing by Schoonebeek to Rabo (including, without limitation, the Pre-Petition Indebtedness) shall be secured by first and paramount liens upon, and security interests in, the Pre-Petition Collateral existing prior to the Petition Date to the extent said liens were valid and enforceable on a Pre-Petition basis (and except to the extent liens prior to Rabo's liens exist pursuant to law which were properly perfected prior to the Petition Date) and (to the extent not included therein), first and paramount liens upon, and security interests in, the following property of Schoonebeek acquired following the Petition Date (collectively, the "Post-Petition Collateral"):

> Accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments, deposit accounts, inventory, equipment, fixtures, farm products, livestock, general intangibles, other Dairy Assets and related property, and records of the Post-Petition Collateral.

Rabo's lien on both Pre-Petition Collateral and Post-Petition Collateral (collectively, the "Collateral"), shall remain a first priority perfected lien on the Collateral.

F. The Court ordered direct assignment of milk proceeds (the "Milk Assignment Order") contemplated in this Order shall:

i. provide that any and all proceeds due and payable to Schoonebeek from DFA from the monthly "true-up check", first payable on or about October 14, 2009, and monthly thereafter, shall be paid directly to Rabo up to the level of the payment due to Rabo under this Order at the address of:

8

Rabo Agrifinance, Inc.
c/o Mr. Howard Huisinga
One CityPlace Drive, Suite 200
St. Louis, MO 63141

and

    ii.    continue in full force and effect unless and until the Milk Assignment Order is terminated or modified pursuant to further Court Order in this proceeding, or until the entire indebtedness due and owing to Rabo is paid.

    2.    Except to the extent liens exist pursuant to law and such liens were perfected prior to the Petition Date and are not subject to subordination, the liens and security interests granted to Rabo by Schoonebeek shall constitute first, paramount, enforceable and valid liens upon and security interests in the Collateral.

    3.    Schoonebeek shall be authorized to use the proceeds of Collateral pledged to Rabo pursuant to Paragraph 1 hereof only for payment of such items as are set forth in the Budget. Payment by Schoonebeek of amounts or expenses other than those specifically set forth in the Budget ("Unauthorized Payments") shall constitute cause to lift the automatic stay unless Rabo consents to such payment or payments in writing. In accepting or rejecting the Budget or any other budget and by taking or omitting to take any other actions pursuant to this Final Order, Rabo shall not have any liability to any third party and shall not be deemed to be in control of the operations of Schoonebeek or to be acting as a "responsible person" with respect to the operation or management of Schoonebeek or to be acting as an "employer" of any of Schoonebeek's employees.

    5.    Immediately upon the entry of this Final Order, Schoonebeek shall account to Rabo for all cash, checks, notes, drafts, instruments, acceptances or other property representing cash or other proceeds of Collateral in Schoonebeek's possession or control. All cash, checks, notes, drafts,

9

instruments, acceptances and other property in the nature of items of payment representing proceeds of property and interests in property of both Schoonebeek (collectively, "Cash Proceeds") currently in the possession of Schoonebeek or in any accounts in financial institutions, including any lockbox or depository accounts, shall be deemed proceeds of the Collateral. All hereafter arising Cash Proceeds, whether attributable to Pre-Petition Collateral or Post-Petition Collateral, to the extent not utilized in the Budget, shall be remitted to Rabo for deposit in accordance with the terms of this Final Order.

6. Agreements by Rabo to allow use of the Collateral pledged to Rabo are subject to the following terms and conditions:

A. Any agreements by Rabo to allow use of its Cash Collateral shall terminate immediately upon the occurrence of any Event of Default (as defined in this Final Order and/or the Loan Documents) that is not cured in accordance with the terms of this Final Order or the Loan Documents (as applicable), each of which Events of Default shall constitute an Event of Default under this Final Order, entitling Rabo, among other things, to terminate this Final Order upon filing a notice with the Court and Schoonebeek. For purposes of this Final Order, an Event of Default shall include any of the following: (i) any "Event of Default" as defined in the Loan Documents, (ii) failure to pay any payment due under the terms of this Final Order on or before the date said payment is due with no grace period allowed, (iii) failure to have proposed and filed a Plan of Reorganization and a proposed Disclosure Statement on or before March 8, 2010; and (iv) breach of any promise, duty, covenant, or requirement contained in this Final Order.

B. Rabo may, however, in its sole discretion, elect in writing not to terminate Schoonebeek's authority to use Collateral and may, in its sole discretion, elect to continue to allow use of Collateral. Any such use shall be without prejudice to Rabo's ability to terminate use and

shall not constitute any course of dealing obligating Rabo to make financial accommodations of any kind in the future. Upon termination of Schoonebeek's authority to use Collateral hereunder, by either party, the Pre-Petition indebtedness and post-petition indebtedness due to Rabo, including all accrued and accruing interest, costs and expenses, shall then be immediately due and payable and Rabo shall be entitled to: (i) exercise any and all rights and remedies allowed under the Loan Documents (including this Final Order), or applicable law; (ii) receive and apply the Cash Proceeds of the Schoonebeek Collateral; and (iii) cease all funding of Schoonebeek; and Schoonebeek hereby consents to cease all use of cash collateral upon termination; provided, however, that the obligations and rights of Rabo and Schoonebeek with respect to all transactions which have occurred prior to such termination, including, without limitation, Schoonebeek's obligation to remit (including the obligation to remit through the milk assignment), and Rabo's right to receive and apply cash proceeds, shall remain unimpaired and unaffected by any such termination and shall survive such termination; and provided, further, that upon such termination, Rabo shall be deemed to have retained all its rights and remedies as provided pursuant to the Bankruptcy Code. This Final Order and the Post-Petition Documents shall automatically be deemed terminated and the Pre-Petition and Post-Petition Indebtedness shall become immediately due and payable as of March 8, 2010, unless extended by further order of the Court upon the agreement of Rabo and Schoonebeek.

C. Schoonebeek waives any and all rights to assess against Rabo on the Schoonebeek Collateral any costs or expenses of preserving or disposing of the Schoonebeek Collateral pursuant to 11 U.S.C. §506 (c) unless otherwise agreed to by Rabo in writing.

D. Schoonebeek agrees that Rabo may inspect and audit the Schoonebeek Collateral as often as it sees fit, during normal business hours

11

7. Upon entry of this Final Order, the security interests and liens granted to Rabo by virtue of this Final Order shall be deemed to continue to be first, valid, enforceable and perfected as against all third parties, without regard to applicable federal, state or local filing and recording statutes, as of the Petition Date and without further action of any party, including Rabo; *provided, however*, that Rabo may, but need not, take such steps as it deems desirable and applicable to comply with such statutes, and all financing statements which are filed listing Schoonebeek as "debtor" and Rabo as "secured party," all mortgages or similar instruments which are filed granting to Rabo liens upon and security interests in real property, and all certificates of title for motor vehicles issued and evidencing liens and security interests in favor of Rabo, shall be deemed to have been filed and the security interests and liens evidenced thereby shall be deemed perfected *nunc pro tunc* as of the Petition Date.

8. Schoonebeek is hereby required to deliver to Rabo such financial and other information concerning the business and affairs of Schoonebeek as required pursuant to the Loan Documents and as required to determine compliance with any performance covenants [within three (3) days of the conclusion of the periods specified therein]. Schoonebeek shall also provide in form and substance satisfactory to Rabo a monthly financial statement as of the previous month on the fifteenth (15th) day of each following month. Schoonebeek shall further provide Rabo with weekly information as to the extent and composition of the Schoonebeek Collateral and as to any collections thereon. Schoonebeek shall further provide Rabo, on the fifth (5th) day of each month, with information, reasonably satisfactory to Rabo, on the aging of accounts receivable collateral and accounts payable. Schoonebeek shall further provide Rabo with evidence of the payment of personal property tax on Schoonebeek's assets. Rabo shall be entitled to inspect any books and records at any time at Schoonebeek's place of business.

9. This Final Order is further subject to the delivery to Rabo of evidence, satisfactory to Rabo, that the Schoonebeek Collateral and the Post-Petition Collateral are insured for the full replacement value thereof and Rabo is named as a Rabo loss payee on all insurance policies.

10. If it shall become necessary for Rabo, in its sole discretion, to exercise its rights under the Loan Documentation in order to effect repayment of any Pre-Petition Indebtedness or Post-petition Indebtedness or to preserve any of the Schoonebeek Collateral, after first giving five (5) days written notice to Schoonebeek or its counsel of record and the counsel of record for any acting Creditors' Committee, Rabo shall be entitled to an expedited hearing within two (2) days (or as soon thereafter as the Court's schedule will allow) after such notice is given with respect to the vacation of the automatic stay and for an order authorizing other appropriate relief. Schoonebeek consents to service of any notice or motion relative to the lifting of the automatic stay upon its counsel, or upon any of its counsel of record. Notwithstanding the foregoing, Rabo shall be entitled to an immediate hearing in the event it alleges fraud or other imminent danger to any of its Collateral. Schoonebeek hereby waives any right to seek: (i) injunctive relief under Section 105 of the Bankruptcy Code or other applicable law in connection with or related to the provisions of this Final Order; (ii) to use Rabo's Cash Collateral without its consent under Section 363(c) of the Bankruptcy Code or otherwise; or (iii) any extension of any time period set forth herein or any modification of any of the provisions of this Final Order or of any Post-petition Documents without the prior written consent of Rabo.

11. All secured creditors reflected in public records and of which Schoonebeek is otherwise aware, the United States Trustee, the twenty largest unsecured creditors and all creditors who have filed a request to receive notice shall be immediately mailed copies of this Final Order,

13

which mailing shall constitute adequate notice of the final hearing on this Final Order, as described in Paragraph 12 below.

12. This matter is set for a <u>telephonic status hearing</u> on this Agreed Final Order at <u>10:00 a.m. on December 16, 2009</u>. The Court shall initiate a call to counsel for the Debtor and counsel for Rabo. Such date may be adjourned or continued by this Court without further notice other than that given in open court. Any party in interest desiring to participate in the telephonic status hearing must request to participate no later than the close of business one day prior to the telephonic hearing date. Such request shall be made to: (1) counsel for Rabo, Jay P. Kennedy and John J. Petr, Kroger, Gardis & Regas, LLP, 111 Monument Circle, Suite 900, Indianapolis, Indiana, 46204-5125; and/ or (2) counsel for Schoonebeek, R. William Jonas, Hammerschmidt, Amaral & Jonas, 137 North Michigan Street, South Bend, IN 46601.

13. This Final Order will expire on March 8, 2010, unless extended by further order of the Court upon the agreement of Rabo and Schoonebeek. If any or all of the provisions of this Final Order are hereafter modified, vacated, or stayed by subsequent order of this or any other Court, such modification, vacation, or stay shall not affect the validity of: (a) any indebtedness to Rabo incurred pursuant to this Final Order prior to the effective date of such modification, vacation, or stay; or (b) the validity and enforceability of any security interest or lien or priority authorized hereby with respect to the Pre-Petition Indebtedness and the Post-Petition Indebtedness. Moreover, notwithstanding such modification, vacation, or stay, any advances of funds, guarantees, use of cash collateral or other financial accommodations made pursuant to this Final Order by Rabo to or for the benefit of Schoonebeek prior to the effective date of such modification, vacation or stay, shall be governed in all respects by the original provisions of this Final Order and Rabo shall be entitled to all

14

the rights, privileges, and benefits, including without limitation the security interests, liens and priorities granted herein, with respect to all such advances.

14. To the extent there exists any conflict between the Loan Documents, or any other agreements, and the terms of this Final Order, this Final Order shall govern.

15. Nothing herein contained shall: (i) affect or impair Rabo's right to seek other adequate protection of its interests in the Schoonebeek Collateral or to seek any other relief available under any section of the Bankruptcy Code; (ii) be deemed to constitute or constitute a commitment by Rabo to continue to make advances to Schoonebeek or to finance Schoonebeek's Chapter 11 case; or (iii) be deemed to constitute a waiver by Rabo of any default by Schoonebeek under the Loan Documentation other than a default occasioned by the filing of the Petition.

Dated: **NOV 20 2009**

HARRY C. DEES, CHIEF JUDGE
UNITED STATES BANKRUPTCY COURT

15

Consented and approved as
to form and substance:


/s/ Jay P. Kennedy
One of the attorneys for
Rabo Agrifinance, Inc.
Jay P. Kennedy, Esq
KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, Indiana 46204-5125
(317) 692-9000

Consented and Approved as
to form and substance:

One of the attorneys for
New Schoonebeek Dairy, LLC
R. William Jonas
Hammelschmidt, Amaral & Jonas
137 North Michigan Street
South Bend, IN  46601

DISTRIBUTION:

R. William Jonas, Jr.
Hammerschmidt, Amaral & Jonas
137 N. Michigan Street
South Bend, IN  46601

Nancy J. Gargula
United States Trustee
One Michiana Square Building
Suite 555
South Bend, IN  46601-2349

Jay P. Kennedy
Kroger, Gardis & Regas, LLP
111 Monument Circle, Suite 900
Indianapolis, IN 46204-5125

## 6/20 Update

| | 9/11 (actual) | 9/18 (forecast) | 9/25 (forecast) | 10/2 (forecast) | 10/9 (forecast) | 10/16 actual | 10/23 actual | 10/30 (forecast) |
|---|---|---|---|---|---|---|---|---|
| Beginning Cash Balance | (30,000) | (2,114) | 96,702 | 65,611 | 56,706 | 29,056 | (27,262) | (27,024) |
| **Collections / Sources of Funds:** | | | | | | | | |
| Interim DFA payments | 120,000 | 120,000 | 85,000 | 75,000 | 75,000 | 65,624 | 65,000 | 65,000 |
| True-Up DFA Payments | | 265,000 | 30,000 | | | | 120,861 | |
| Calves | | | 2,500 | | | 1,500 | 2,000 | |
| Cull Cows Sold | 1,873 | 1,873 | 1,500 | 2,000 | 1,500 | 2,000 | | |
| Other | | | | | | | | 25,000 |
| Total | 91,873 | 384,759 | 215,702 | 142,611 | 133,206 | 46,762 | 160,867 | 138,076 |
| **Expenses / Uses of Cash:** | | | | | | | | |
| Animal Health | 5,238 | 6,000 | 5,000 | 6,000 | 5,000 | 6,000 | 7,000 | 6,000 |
| Bank Charge | | | | | | | | |
| Bedding | 1,754 | 2,786 | 2,500 | 2,000 | 2,000 | 2,000 | 2,000 | 1,000 |
| Breeding | 1,000 | 1,500 | 1,500 | 1,500 | 1,500 | 1,000 | 1,500 | 1,000 |
| Cull Cow Expense | | 8,250 | 29,400 | 8,400 | 29,400 | 8,250 | 8,400 | 8,400 |
| Custom Hire | | | 8,000 | 15,000 | 2,000 | | | 2,000 |
| Feed | 35,000 | 43,000 | 40,000 | 39,000 | 38,000 | 40,000 | 38,000 | 37,000 |
| Fuel | 1,855 | 717 | 1,250 | 1,500 | 1,500 | 1,750 | 1,750 | 1,750 |
| Hauling & Trucking | | | | | | | | |
| Insurance | | | 985 | 8,000 | | | 180 | |
| Salaries, wages & benefits | 17,000 | 5,000 | 22,946 | | 18,000 | 5,000 | 19,500 | 5,946 |
| Marketing | | | | | | | | |
| Rent | | | | 2,000 | | | | |
| Supplies | 1,650 | 2,000 | 2,000 | 1,750 | 2,000 | 1,750 | 2,000 | 1,500 |
| Utilities | 3,213 | 750 | 12,710 | 500 | 250 | 2,000 | | 11,000 |
| repair | | | | | | | | |
| Pleasant Home Farm | 15,000 | 15,000 | 20,000 | | | | | |
| Taxes | 6,806 | 1,045 | 3,300 | 2,256 | 4,000 | 2,000 | 3,500 | 1,000 |
| Other | 282 | | 600 | | 500 | | 500 | |
| Total | 93,987 | 88,057 | 150,091 | 85,905 | 104,150 | 71,750 | 86,340 | 78,596 |
| Add: difference checks written vs. cleared | | | | | | | | |
| Net Cash Balance Before (Borrowing) / Paydown | (2,114) | 296,702 | 65,611 | 56,706 | 29,056 | (27,024) | 48,076 | 21,880 |
| **Draw / (Paydown) on Line:** | | | | | | | | |
| Hard Note | | 200,000 | | | | | 10,000 | |
| Working Cap Note | | | | | | | 71,422 | |
| Rabo Interest | | | | | | | 23,112 | |
| Total | | 200,000 | | | | | | |
| Actual Cash Balance | (2,114) | 96,702 | 65,611 | 56,706 | 29,056 | (27,024) | 48,076 | 21,880 |

EXHIBIT A