UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION


| | | |
|---|---|---|
| IN THE MATTER OF | ) | |
| | ) | |
| NEW SCHOONEBEEK DAIRY, LLC, | ) | CASE NO.  09-34327 HCD |
| | ) | CHAPTER 11 |
| | ) | |
| DEBTOR. | ) | |

Appearances:

R. William Jonas, Jr., Esq., counsel for debtor, Hammerschmidt, Ameral & Jonas, 137 North Michigan Street, South Bend, Indiana 46601;

Matthew J. Connelly, Esq., counsel for creditor North Central Cooperative, Inc., Blume, Connelly, Jordan, Stucky & Lauer LLP, 110 West Berry Street, Suite 1700, Fort Wayne, Indiana 46802; and

Alexander L. Edgar, Esq., Assistant United States Trustee, One Michiana Square, 100 East Wayne Street, South Bend, Indiana 46601.


MEMORANDUM OF DECISION

At South Bend, Indiana, on March 31, 2011.

Before the court are the "Motion to Disallow Secured Claim of North Central Co-op," filed by the debtor New Schoonebeek Dairy, LLC ("debtor"), and "North Central Cooperative's Objection to Debtor's Motion," filed by creditor North Central Cooperative, Inc. ("NCC" or "creditor"). After the court held a pretrial conference on the matter, the parties filed briefs. The Motion and Objection are now before the court.[1]


BACKGROUND

The debtor, which owns and manages a dairy operation in Wabash County, Indiana, filed a voluntary chapter 11 petition, schedules, and Statement of Financial Affairs on September 8, 2009. The

---

[1]  The court has jurisdiction to decide the matter before it pursuant to 28 U.S.C. § 1334 and § 157 and the Northern District of Indiana Local Rule 200.1.  The court has determined that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

debtor is authorized as a Debtor-in-Possession to continue its operation and management of the business. The debtor's assets were valued at $3,129,862.91.[2]

On September 16, 2009, NCC submitted two timely proofs of claim: a secured claim (Claim #2)[3] in the amount of $146,186.98, and an unsecured claim (Claim #3) in the amount of $83,362.67. The amounts of the two claims were undisputed. On October 14, 2009, first priority secured creditor Rabo Agrifinance, Inc. ("Rabo"), filed its proof of claim in the amount of $3,305,576.10. As of September 30, 2010, Rabo's secured claim had been reduced to $2,582,434.25. *See* R. 159, Rabo's Objection to Confirmation. The debtor then filed a Motion to Disallow NCC's secured claim, Claim #2, and NCC filed its Objection.

The debtor sought to disallow NCC's claim as a secured claim but to allow it as an unsecured claim. It maintained that NCC was a junior secured creditor whose claim was wholly unsecured because the amount of senior lienholder Rabo's claim exceeded the value of the debtor's collateral. It pointed out that Rabo holds a blanket lien on all the debtor's property. Therefore, the debtor argued, there was no equity to which a secured claim of NCC could attach. The creditor, disputing the debtor's assertions, argued that there were sufficient collateral assets available for distribution to NCC after satisfying Rabo's claims. After a hearing on the Motion, the parties filed a stipulation of facts and briefs.

In its opening brief, NCC demonstrated that, according to the debtor's statement of its total assets – in the amount of $3,129,862.91 (as stated in its letter of October 11, 2010) or of $2,975,570.00 (as stated in its Amended Disclosure Statement) – the debtor could pay the secured claim of $2,582,434.25 owed to Rabo and still have sufficient funds remaining to satisfy NCC's secured claim. *See* R. 188 at 1-2. NCC also

---

[2] Both parties note that, in the Debtor's Liquidation Analysis, attached to the Amended Disclosure Statement of August 3, 2010, the debtor presented the liquidation value of its assets as $2,975,570.00. In the Amended Disclosure Statement of February 7, 2011, the debtor stated that the total assets of the debtor at liquidation value were in the amount of $2,381,000.00. The latest Amended Disclosure Statement was approved by the court on March 15, 2011. *See* R. 215.

[3] NCC's proof of claim for Claim #2 was amended on February 2, 2010, and September 14, 2010.

2

asserted that the valuation of claims was to be made on the date of the valuation hearing.  It relied upon *In re Anderson*, 88 B.R. 877 (Bankr. N.D. Ind. 1988), which established when a valuation of farm real estate should be made, pursuant to § 1225(a)(5):

> The proper date to determine value of the collateral is the date of the valuation hearing since, as a practical matter, confirmation will almost always follow within a brief time after the hearing.

*Id.* at 884.

In its brief, the debtor maintained its argument that NCC, a junior secured creditor, held a wholly unsecured claim because the amount of Rabo's senior claim exceeded the value of the debtor's collateral. *See* R. 189 at 2.  It also contended that the date of the bankruptcy petition was the relevant date for valuation of NCC's secured claim.  It relied upon *In re Hall*, 118 B.R. 671 (Bankr. S.D. Ind. 1990), which stated:

> This Court . . . concludes that the commencement of the case (or the time when property is first brought into the estate) is the appropriate time for determining whether the estate has an interest in property that is later exempted.  This date comports best with the underlying framework of bankruptcy under the Code, i.e. that all a debtor's property became part of the estate, subject to later removal from the estate by such actions as the debtor's exemption and the trustee's abandonment of estate property.

*Id.* at 674.

In its brief, the debtor also raised, for the first time, the allegation that NCC did not adequately identify its collateral, in violation of Federal Rule of Bankruptcy Procedure 3001, and did not satisfy the writing and authentication requirement of Indiana Code § 26-1-9.1-203.  *See* R. 189 at 4-5.  It argued that NCC's claim therefore was not enforceable as a secured claim.  Finally, it pointed out that NCC's collateral (cattle feed and other goods) had been consumed and was paid for under the cash collateral order.  For that reason, as well, the debtor insisted that NCC's interest had been dissipated and that it had only an unsecured claim against the debtor.

Each party responded to the other party's brief.  NCC contended that the debtor's assertion that NCC had not identified its collateral adequately was "patently false."  R. 195 at 1.  NCC explained that, with the court's permission, it had amended and supplemented its proof of claim with the correct UCC-1 financing

3

statement attached.  It argued that "a financing statement can satisfy the writing requirement for a security agreement under I.C. 26-1-9-203." *Id.* at 2 (citing *Gibson County Farm Bureau Cooperative Ass'n, Inc. v. Greer*, 643 N.E.2d 313 (Ind. 1994)).  It also buttressed its argument that valuation of claims should be made on the date of a valuation hearing, not on the date of the petition.  Lastly, it pointed out that the debtor's dairy operation required a constant ongoing supply of feed and silage from NCC; therefore, any argument concerning consumption of that collateral was inaccurate and irrelevant.

The debtor, in its reply brief, raised another new issue.  It insisted that NCC's amended proof of claim did not cure a fatal flaw:  The UCC financing statement misidentified the debtor as "New Schoonebeek Dairy" and as the sole proprietorship of Harry Bekel, and not as "New Schoonebeek Dairy, LLC."  *See* R. 196 at 1.  It also contended that NCC failed to produce a signed security agreement with the debtor.

NCC was granted permission to file another reply brief, with evidence of its secured status, over the debtor's objection.  The court let both parties file one further round of briefs.[4]  *See* R. 199.

In its "Response to Debtor's Reply Brief," NCC provided further documentation to demonstrate its security interest.  *See* R. 197, Ex. A.  Attached to the brief were the Note Security Agreement executed by the debtor and NCC on March 25, 2009, and a Promissory Note Contract (in the amount of $147,000) executed by the debtor on the same date.  The Note stated that it was secured by a security agreement executed the same day, and it listed the collateral that was listed on the UCC-1 financing statement filed by NCC on July 21, 2009.  Because this court accepted NCC's amended UCC-1 financing statement and amended proof of claim in its Order of September 14, 2010, NCC asserted that it had provided adequate proof of NCC's secured claim for $146,186.98 pursuant to Bankruptcy Rule 3001(c).

---

[4]  The Court had directed the parties to file a Stipulation of Facts by December 9, 2010; simultaneous briefs by January 10, 2011; and reply briefs by January 25, 2011.  *See* R. 172.  NCC filed a timely stipulation, initial brief, and response brief.  The joint Stipulation of Facts was untimely, but the debtor's initial and response briefs were timely.  The debtor raised new matters in each brief, issues which went beyond the scope of the Motion before the court.  For that reason, NCC requested the right to file a reply brief, and the court granted it.  *See* R. 199.  The court denied the debtor's objection to NCC's reply, but allowed the debtor the opportunity to file an additional reply brief as well.  *Id.*

The debtor's Supplemental Brief, *see* R. 209, argued that NCC failed to establish a secured claim for three reasons: (a) the security agreement and financing statement did not correctly identify the debtor and did not sufficiently identify all the collateral; (b) neither document was signed by the debtor; and (c) the filing of the financial statement was a preferential transfer.

On February 14, 2011, the court took the Motion, the Objection, and the full record of stipulated facts and briefs related to the Motion under advisement. *See* R. 199. NCC filed a "Response to Debtor's Supplemental Brief," *see* R. 213, challenging "significant and material misstatements of fact" in the debtor's final brief. The court holds that NCC's brief was untimely; it will not be considered. In addition, to the extent that either party has raised arguments for the first time in the reply briefs, the new arguments are deemed waived. *See In re Sokolik*, _ F.3d _, 2011 WL 455903 at *5 (7th Cir. Feb. 10, 2011).

<u>DISCUSSION</u>

The court begins with the "academic question" raised by the debtor: On what date is a creditor's secured status determined? Is a creditor classified as "secure" on the date of the petition, the date of the valuation hearing, the date the plan is confirmed, or some other date? The court is required, pursuant to 11 U.S.C. § 502(b), to determine the amount of a claim "as of the date of the filing of the petition." It now considers whether the claim's secured status is determined as of the same date, the petition date, as the debtor urges, or as of the date of the valuation hearing, as NCC asserts.

The weighing of these two options was thoroughly discussed in *In re Blake*, 2009 WL 4349787 (Bankr. E.D. Mass. Nov. 30, 2009). The Massachusetts bankruptcy court considered whether the valuation of a secured claim, in a chapter 11 case, should be made when the petition was filed or at a later time. It acknowledged that a claim was allowed "as of the date of the filing of the petition" under § 502. It then described the relationship between "allowed" under § 502 and "secured" under § 506:

> [K]nowing the amount of an "allowed claim" – one allowed under § 502(b) – is necessary but not sufficient to determine whether and to what extent that claim is a secured claim; and the

5

> quantification of the secured portion of a claim is a distinct act from the quantification of the claim itself under § 502(b), not one governed by § 502(b) itself.

*Id.* at *4. Under § 506(a), the value of the secured portion must be determined "in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." Valuation is therefore "context-specific," according to *Blake.* It may be tied to the identified purpose, use, or disposition of the property; its value may be based upon "the price that could be agreed by willing buyers and sellers negotiating for a replacement." *United Air Lines, Inc,. v. Regional Airports Improvement Corp.,* 564 F.3d 873, 875 (7th Cir. 2009). Because there are variables concerning the valuation, factors that cannot be known at the commencement of the case, the court found that it was necessary to determine the amount of the secure claim at some time after the filing of the petition, when the other information and charges have accrued. It concluded "that section 502(b)'s requirement to determine the amount of a claim *as of the date of the filing of the petition* does not apply to the quantification of the secured portion of a secured claim." *In re Blake*, 2009 WL 4349787 at *4.

The issue in *Blake* was the value of a secured claim in the chapter 11 context. Analyzing the clauses of § 1129(b)(2)(A), the court recognized that, for example, any sale of encumbered property would occur at or after confirmation, and that payments given for an allowed secured claim must have a certain present value "as of the effective date of the plan." It was persuaded that "Congress must have contemplated that the value of a secured claim would, for purposes of § 1129(b)(2)(A), . . . be determined as of the date of confirmation." *Id.* at *5. The court concluded:

> For purposes of plan confirmation, a secured claim is valued as of the date of confirmation. Prior to that date, the value of the secured claim is prevented from erosion only by adequate protection, whether obtained consensually or by order of the court. The confirmation process is not a vehicle for restoring to the secured creditor value that, for whatever reason, eroded between the commencement of the case and confirmation of the plan.

*Id.* at *6.

6

This court is in full agreement with the thoughtful analysis in *In re Blake* and with *In re Anderson*, 88 B.R. 877 (Bankr. N.D. Ind. 1988), which determined that, in a chapter 12 case, the appropriate date for valuing property securing a claim is the date of a valuation hearing, which usually is held shortly before confirmation. The debtor's citation to *In re Hall*, 118 B.R. 671 (Bankr. S.D. Ind. 1990), was less helpful to the court. That case involved a federal tax lien on the chapter 13 debtor's property. It did state the legal proposition that "the commencement of the case . . . is the appropriate time for determining whether the estate has an interest in property that is later exempted." *Id.* at 674. However, it did not consider the proper time for valuation of claims. The debtor presented no argument to the court to explain why *In re Hall* would justify the choice of the petition date for valuation of a secured claim, and the court finds none. The court is persuaded that, in this chapter 11 case, the value of the property securing NCC's claim should be based on the history of the case and the planned use of that property, not on the date of the bankruptcy filing. Valuation is measured, therefore, as of the date of confirmation of the debtor's plan or date of a valuation hearing.

The debtor's motion actually seeks no valuation of the creditor's secured claim; it seeks to have the claim disallowed in its entirety as a secured claim and allowed only as unsecured. Whether a claim is a "secured claim" is, as was noted above, quite separate from determining whether the claim is an "allowed claim." *See In re Taylor*, 289 B.R. 379, 385-86 (Bankr. N.D. Ind. 2003). NCC holds an "allowed claim" in the amount of $146,186.98, since no objection was raised to the actual allowance of the claim or to the amount of the claim. *See* R. 162; § 502(b). The court now considers NCC's secured status by placing a value on the lien NCC holds on property of the bankruptcy estate. *See In re Taylor*, 289 B.R. at 386 (citing § 506(a), Fed. R. Bankr. P. 3012).

The parties' briefs have made it evident that, throughout this bankruptcy case, the value of the collateral and, correspondingly, NCC's secured status, were fluid and changing. *See In re Plunkett*, 191 B.R. 768, 779 (Bankr. E.D. Wis. 1995) (citing *Dewsnup v. Timm*, 502 U.S. 410, 112 S. Ct. 773, 116 L.Ed.2d 903

(1992)).  At this point in the debtor's chapter 11 case, the disclosure statement has been approved and the

Plan is being considered for confirmation.  Confirmation of the Plan is set for June 7, 2011, and the objection

deadline is May 2, 2011.  One purpose of the debtor's Motion to Disallow NCC's secured claim, even

though not articulated in the Motion, surely was to establish NCC's treatment under that Plan.  The court's

determination concerning NCC's status clearly would affect its treatment under the Plan.

In sum, the court has considered (a) the debtor's argument – that Rabo's blanket lien is greater

than the debtor's assets and thus that NCC's secured claim cannot be satisfied; (b) NCC's response – that

earlier valuations could satisfy NCC's secured claim; and (c) the court's determination that the relevant date

for valuation of a secured claim is the date of confirmation of the plan or the valuation hearing date, if in

close proximity to that date of confirmation.  The court now finds that the valuation of NCC's secured status

must be resolved by a valuation hearing.  *See In re R & S Vinyl Products Group, L.L.C.,* 291 B.R. 685, 687

(Bankr. W.D. Pa. 2003) (holding that, when "the purpose of the valuation [of property securing a creditor's

claim] is to determine the treatment of a claim by a plan, the values determined at the § 506(a) hearing must

be compatible with the values that will prevail on the confirmation date to avoid an inequitable result")

(quoting *In re Stanley*, 185 B.R. 417, 423-24 (Bankr. D. Conn. 1995)).

The court therefore will conduct a Rule 3012 hearing on valuation.  *See In re Taylor*, 289 B.R.

at 386 (explaining that the court determines the value of the creditor's property, based upon information

presented at the hearing, and that the determined valuation becomes the secured claim, and any balance of

the allowed claim is unsecured); *see also In re Seasons Partners, LLC*, 439 B.R. 505, 509 (Bankr. D.Ariz.

2010) ("Once a request for valuation is made, and a decision rendered within a very sort time prior to

confirmation, the parties must live with the value found, and not seek to change it due to continuing

fluctuations of economic variables.").  NCC has the burden of proving its entitlement to a distribution from

the bankruptcy estate by setting forth the value of its secured claim as of the date of that hearing.  *See In re

Panther Mountain Land Dev., LLC*, 438 B.R. 169, 193-94 (Bankr. E.D. Ark. 2010).  However, the debtor,

8

having moved to disallow NCC's claim and having proposed a Plan with only one secured creditor, Rabo, has the burden of defending its plan. The hearing will be set by separate order.

One issue remains. Although the debtor's allegations that NCC's proof of claim was flawed were not raised in its Motion or in any hearing or pre-trial conference before the court, the court will address the parties' arguments to the extent that NCC was able to respond to the debtor's claims.

In its briefs, the debtor asserted that NCC's Proof of Claim failed to identify its collateral, failed to produce a security agreement signed by the debtor, and failed to file a proper UCC-1 Financing Statement. In response, NCC first pointed to its UCC-1 statement attached to the amended proof of claim, with a lengthy description of the collateral securing its claim.[5] It also produced the Note Security Agreement and Promissory Note Contract (in the amount of $147,000.00) executed by the debtor and NCC on March 25, 2009. The amount of the Note is almost identical to the amount of the secured claim, $146,186.98. The court finds that these documents are clear evidence that NCC holds a secured lien and that it perfected its security interest in the collateral by filing the UCC-1 financing statement in the proper jurisdiction. *See In re A-1 Paving and Contracting, Inc.*, 116 F.3d 242, 245 (7th Cir. 1997) (finding that the UCC-1 financing statement was a "permissible source[] of evidence to determine that the parties intended to create a security interest"); *see also Troxel Equipment Co. v. Limberlost Bancshares*, 833 N.E.2d 36, 38 (Ind. App. 2005) ("A UCC-1 filing is a financing statement filed with the County Recorder or the Indiana Secretary of State, perfecting a security interest in collateral. See Ind. Code § 26-1-9.1.").

The court is cognizant of the ruling by the Indiana Supreme Court, in *Gibson County Farm Bureau Cooperative Ass'n v. Greer*, 643 N.E.2d 313 (Ind. 1994), which held:

---

[5] It is noteworthy that, at the bottom of the UCC-1 financing statement's list of the collateral covered, it states as the last item: "all livestock owned, maintained and produced by the debtor that does not have a lien, security interest previously recorded by RaboBank America, 1 City Place Dr., Suite 200, St. Louis, Mo. 63141." NCC has not denied that its lien is junior to the lien of Rabo Agrifinance, Inc.

> Although we are not willing to go so far as to hold that a standard-form UCC-1 financing statement alone is, as a matter of law, sufficient evidence that the parties intended to create a security interest, we do hold that once the Writing Requirement of § 9-203(1) is satisfied, whether the parties intended the writing to create a security interest is a question of fact for the trier of fact to determine.

Id. at 320.  Because the court finds that NCC has demonstrated that there was a valid security agreement which adequately described the collateral and displayed the signature of the debtor, and that the UCC-1 statement satisfied the statutory requirements, the court concludes that the elements of Rule 3001 were adequately met.  The court further determines that NCC's amended proof of claim preserves its interests in the assets of the bankruptcy estate.  The court permitted the amendment to cure a defect and to describe the claim with more specificity.  *See* Fed. R. Bankr. P. 7015(a)(2).  Before allowing the amendment, the court determined that it was not a new claim against the estate.  *See In re marchFirst, Inc.*, 431 B.R. 436, 443 (Bankr. N.D. Ill. 2010) (allowing amendment only if the original claim "fairly alerted" the parties of the nature of the claim and if it does not assert a new right to payment); *see also Glidden Co. v. FV Steel and Wire Co.*, 350 B.R 96, 103 (E.D. Wis. 2006) (permitting a court to apply the liberal amendment guidelines of Rule 15 of the Federal Rules of Civil Procedure).  The court now concludes that NCC holds a secured lien in the property of the debtor's estate, to the extent there are assets remaining for distribution at the time of confirmation of the plan.

The court summarizes its determinations herein:

1.  NCC's Response to Debtor's Supplemental Brief, filed March 11, 2011, is denied as untimely filed.

2.  Valuation of a chapter 11 creditor's secured status is determined on the date of confirmation of a debtor's plan or on the date of a valuation hearing, if held shortly before confirmation.

3.  Valuation of NCC's secured claim will be resolved in a valuation hearing to be set by separate order.

4.  NCC has demonstrated that its Claim #2 is a valid, secured claim in the amount of $146,186.98.

<u>CONCLUSION</u>

For the reasons discussed above, the Motion to Disallow Secured Claim of North Central Co-op filed by the chapter 11 debtor New Schoonebeek Dairy, LLC, is denied.  Hearing on valuation of the secured claim of North Central Co-operative, Inc., will be set by separate order.

SO ORDERED.

/s/ HARRY C. DEES, JR.
HARRY C. DEES, JR., JUDGE
UNITED STATES BANKRUPTCY COURT

11