UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| NEW SCHOONEBEEK DAIRY, LLC, | ) | CASE NO.  09-34327-hcd |
| TAX ID/EIN: 61-1409707 | ) | Chapter 11 |
| | ) | |
| 1858 E. 800S | ) | |
| La Fontaine, IN  46940 | ) | |
| | ) | |
| Debtor | ) | |

### MOTION OF RABO AGRIFINANCE, INC. FOR
### RELIEF FROM STAY AND ABANDONMENT
### OF DEBTOR'S LEASE INTEREST IN REAL ESTATE AND
### OWNERSHIP INTEREST IN FARM PRODUCTS AND EQUIPMENT

Comes now Rabo Agrifinance, Inc. ("Rabo"), by counsel, and moves the Court to enter an order granting it relief from stay and abandoning from the Debtor's estate the Debtor's lease interest in certain real estate, and the Debtor's ownership interest in farm products, equipment and other personal property assets secured to Rabo.  In support of its Motion, Rabo shows the Court as follows:

### Facts Applicable to the Motion

1.      On September 8, 2009 (the "Petition Date"), the Debtor, New Schoonebeek Dairy, LLC ("Schoonebeek") filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code (the "Petition").  Pursuant to Sections 1107 and 1108 of the Bankruptcy Code, Schoonebeek has retained possession of Schoonebeek's assets and is authorized, as a debtor in possession, to continue the operation and management of the business previously conducted by Schoonebeek.

2.      Schoonebeek's business operations include a dairy operation located in Wabash County, Indiana (the "Dairy").  Assets of the Dairy include dairy cattle, offspring of cattle (collectively, the

1

"Herd"), products of dairy cattle (including milk), feed, equipment, rolling stock, accounts, contract rights and other personal property (collectively, the "Dairy Assets").

3.      In order to operate the Dairy, Schoonebeek leases real estate and improvements located at 1858 E. 800 South, La Fontaine, Indiana (the "Real Estate"), the Real Estate being more particularly described in **Exhibit A** attached hereto.

4.      As of the Petition Date, Rabo asserted its first priority secured claim against Schoonebeek and the Dairy Assets in the principal amount of not less than $3,230,392.01 plus interest, and additional fees and expenses (the "Pre-Petition Obligations"), by virtue of, among other things:

      a.      A Credit Agreement, dated May 24, 2006, by and between Schoonebeek and Rabo in the original principal amount of $3,134,000.00 (the "Credit Agreement");

      b.      An Amended and Restated Credit Agreement, dated July 17, 2007, by and between Schoonebeek and Rabo in the original principal amount of $3,174,400.00 (the "Amended Credit Agreement");

      c.      A First Amendment to the Amended Credit Agreement dated May 30, 2008 (the "First Amendment to the Amended Credit Agreement";

      d.      A Second Amendment to the Amended Credit Agreement dated March 6, 2009 (the "Second Amendment to Amended Credit Agreement");

      e.      A Herd Line of Credit Note, dated July 17, 2007, incorporating the terms of the Amended Credit Agreement, by and between Schoonebeek and Rabo in the original principal amount of $2,678,400.00 (the "Herd Note"); and

      f.      An Amended and Restated Working Line Capital Line of Credit Note, incorporating the terms of the Amended Credit Agreement, First Amendment to Amended Credit Agreement and Second Amendment to Amended Credit Agreement, by and between

2

Schoonebeek and Rabo in the original principal amount of $646,000.00 (the "Working Capital Note").

g.      The Obligations represented by the Herd Note and the Working Capital Note are collectively referred to hereinafter as the "Loan".

h.      The loan documents signed and delivered in connection with the Loan include, without limitation, the following:

    i.      The Herd Note;

    ii.     The Working Capital Note;

    iii.    The Credit Agreement, Amended Credit Agreement and amendments thereto referenced above;

    iv.     A Security Agreement, dated May 24, 2006; and

    v.      All other documents and agreements signed in connection with the financing arrangements between Rabo and Schoonebeek (collectively, the "Loan Documents").

5.      Rabo has asserted that the Pre-Petition Obligations are secured by duly perfected first priority security interests and liens (the "Pre-Petition Liens") in certain personal property owned by Schoonebeek including all accounts, contract rights, documents, documents of title, payment intangibles, investment property, chattel paper, instruments, deposit accounts, inventory, equipment, fixtures, farm products, general intangibles, the Dairy Assets and related property as defined in the Security Agreement (the Pre-Petition Collateral"), with priority over all liens, claims, and interests of all other persons and entities including Schoonebeek.

3

6.     Rabo filed its Proof of Claim in this proceeding on October 14, 2009, the Proof of Claim asserting that Rabo maintained a secured claim against the Debtor in the sum of $3,305,576.10, as of the Petition Date.

7.     Pursuant to the Debtor's Emergency Motion for Order Authorizing Use of Cash Collateral and Rabo's filed Objection thereto, an Order was entered by the Court on October 1, 2009, allowing for the use of cash collateral, on an agreed basis.  A further Final Order was entered by the Court on November 20, 2010, which Final Order was extended by an additional Order entered on May 6, 2010, extending the use of cash collateral on an agreed basis through July 1, 2010.  The Final Order, as extended, has now expired by its terms, but the parties have continued to operate under its terms until September 15, 2010.

8.     Paragraph Two (2)  of the Final Cash Collateral Order provides that,

> Except to the extent liens exist pursuant to law and such liens were perfected prior to the Petition Date and are not subject to subordination, the liens and security interests granted to Rabo by Schoonebeek shall constitute first, paramount, enforceable and valid liens upon and security interests in the Collateral.

9.     By reason of the premises, Rabo maintains a first priority security interest in virtually all of the personal property owned by Schoonebeek including Schoonebeek's farm products (and specifically its livestock), and equipment (collectively, the "Collateral").

10.     As of April 1, 2011, Rabo continued to be owed the sum of $2,330,502.98 in principal on the Herd Note and the sum of $236,621.81 in principal on the Working Capital Note for a total of $2,567,124.90, each plus additional interest and other charges as the Court shall allow, (the "Total Remaining Indebtedness"), which Total Remaining Indebtedness is fully secured by the Collateral.  In addition, Rabo is entitled to its reasonable attorney's fees as part of its balance.

11.    As of March 31, 2011, the Debtor reports that Collateral is made up of approximately 1450 cows valued at approximately $1,758.00/per cow for a total of $2,549,100.00; and Machinery & Equipment valued for liquidation purposes in the Amended Plan by Schoonebeek at $250,000.00.

12.    The value of the Collateral and other assets pledge to Rabo total at least the Total Remaining Indebtedness.

13.    As has been previously demonstrated to the Court at hearings in this matter, the quantity of Rabo's Collateral has been steadily declining, and the Debtor's valuation of the Collateral has significantly declined over the past six (6) months.  Therefore Rabo has not been adequately protected for the loss of value in its Collateral.

14.    On April 29, 2011, Rabo filed its Statement of Transfer of Claim pursuant to BR Rule 3001(e)(2) detailing that  Rabo has been transferred the pre-petition and post-petition administrative claims of Bekel Leasing, LLC ("Bekel Leasing").

15.    Pursuant to a Motion made by the Debtor on February 19, 2010 (Document No. 107), and subsequent Order approving the Motion on March 17, 2010 (Document No. 112), the Debtor and Bekel Leasing entered into an agreement whereby the Debtor assumed a lease of the Real Estate from Bekel to the Debtor (the "Lease Assumption Agreement").  The Lease Assumption Agreement provided that continuing monthly payments due under the Lease between New Schoonebeek were required to be made.  A copy of the Lease Assumption Agreement is attached hereto as **Exhibit B**.

16.    As evidenced in the Objection of Bekel Leasing filed in this proceeding on March 24, 2011, the Debtor is in default of the continuing monthly payments required under the Lease Assumption Agreement (with at least nine (9) moths elapsing since the last Lease payment).  Rabo hereby incorporates the Objection of Bekel Leasing (Document No. 225) filed in this proceeding on March 24,

2011 to document the continuing breach of the Lease Assumption Agreement, and attaches a copy of the Objection hereto as **Exhibit C**.

17.     In summary, Rabo is owed $2,567,124.90, plus additional interest and other charges as the Court shall allow, which sum is collateralized by a first priority secured interest in the Debtor's Collateral (the "Rabo Secured Claim"), and is further owed $675,087.58 as an administrative claim pursuant to the assignment of the claim from Bekel Leasing to Rabo (the "Rabo Administrative Claim").

## COUNT I – RELIEF FROM STAY ON REAL ESTATE

18.     As set forth herein, the Debtor is in breach of the Lease Assumption Agreement as approved by this Court.

19.     Pursuant to 11 U.S.C. §362(d)(1), the Court may grant relief from the stay "for cause, including the lack of adequate protection of an interest in property of such party in interest."

20.     The complete and total breach of the Lease Assumption Agreement by the Debtor constitutes cause to terminate the stay.

21.     As evidenced by the Debtor's Monthly Report for March, 2011 (the "March Report"), a copy of which is attached hereto as **Exhibit D**, while the Debtor appears to accrue for the payment of the rent due, its cash position for both march, 2011, and throughout this Chapter 11 proceeding, indicates that there are insufficient resources to ever fund the payment of rent agreed to by the Debtor in the Lease Assumption Agreement.

22.     Rabo is not being adequately protected with regard to its assigned interest in the Real Estate, and the stay with regard to the Debtor's interest in the Real Estate should be terminated and abandoned from the bankruptcy estate.

WHEREFORE, Rabo Agrifinance, Inc. prays that the Court terminate the automatic stay in bankruptcy pursuant to 11 U.S.C. §362 with regard to the Debtor's Lease interest in the above described Real Estate and Improvements; abandon the Real Estate from the Debtor's estate; and for all other proper relief.

### COUNT II – RELIEF FROM STAY ON FARM PRODUCTS, EQUIPMENT AND OTHER PERSONAL PROPERTY ASSETS

23.     The Debtor is utilizing the Collateral in the course of its Dairy operations.

24.     The Collateral is declining in value due to their use in the course of the Dairy operations.

25.     The Debtor's March Report indicates substantial and continuing losses which losses do not allow for the adequate protection of Rabo's interest in its Collateral.  Specifically:

      a.     The March Report shows a cash loss of <$4,982.00> for the month even without the payment of required rent (as demonstrated above), debt service over and above interest, and other ordinary expenses.

      b.     The March Report shows an accounting accrual loss of <$46,378.00> for the month, and <$95,973.00> for the year.

      c.     While the number of cows did go up in March, the cow count is still approximately eighty (80) cows below what was reported on January 1, 2011.

26.     Pursuant to 11 U.S.C. §362(d)(2), the Court may grant relief from the stay if the Debtor does not have equity in the property and if the property is not necessary for an effective reorganization.

27.     Rabo's secured claim in the Collateral, combined with any equity North Central Co-Op may have in the Collateral indicate that the Debtor does not have any equity in the Collateral.

28.     The Debtor has not, and cannot, effectively reorganize, as has been demonstrated in its inability to have a Chapter 11 Plan of Reorganization confirmed pursuant to the provisions of 11 U.S.C. §1129.

29.     By reason of the premises, the Court should enter an order terminating the stay with regard to the Collateal and abandon the Collateral from the Debtor's bankruptcy estate.

WHEREFORE, Rabo Agrifinance, Inc. prays that the Court terminate the automatic stay in bankruptcy pursuant to 11 U.S.C. §362 as to the Collateral; abandon the Collateral from the Debtor's estate; and for all other proper relief.

Respectfully Submitted,

KROGER, GARDIS & REGAS, LLP

By:  /s/ Jay P. Kennedy_____
     Jay P. Kennedy, #5477-49
     Attorneys for Creditor,
     Rabo Agrifinance, Inc.

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN   46204-5125
(317) 692-9000
(317) 264-6832 Fax
jpk@kgrlaw.com

### <u>CERTIFICATE OF SERVICE</u>

Service of the foregoing was made by placing a copy of the same in the United States Mail, First Class, postage prepaid, or by electronic service to the following this 2nd day of May, 2011:

R. William Jonas, Jr.
Hammerschmidt, Amaral & Jonas
137 N. Michigan Street
South Bend, IN  46601

Nancy J. Gargula
United States Trustee
One Michiana Square Building
Suite 555
South Bend, IN  46601-2349

Alex Edgar
100 E Wayne Street
One Michiana Square
RM 555
South Bend, IN 46601

Douglas C. Lehman
Douglas C. Lehman Professional
  Corporation
30 West Canal Street
Wabash, IN 46992

W. David Arnold
Robinson, Curphey & O'Connell
Four Seagate, Ninth Floor
Toledo, OH 43604

By:  /s/ Jay P. Kennedy

KROGER, GARDIS & REGAS, LLP
111 Monument Circle, Suite 900
Indianapolis, IN  46204-5125
(317) 692-9000
(317) 264-6832 fax
jpk@kgrlaw.com