UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

IN THE MATTER OF                          )
                                          )
NEW SCHOONEBEEK DAIRY, LLC,               )        CASE NO.  09-34327 HCD
                                          )        CHAPTER 11
                                          )
          DEBTOR.                         )

MEMORANDUM OF DECISION

At South Bend, Indiana, on June 30, 2011.

Before the court are the Proposed Findings of Fact and Conclusions of Law filed by the debtor, New Schoonebeek Dairy, LLC ("debtor"), and by its primary secured creditor, Rabo Agrifinance, Inc. ("Rabo").  On June 7, 2011, the court held a trial on Rabo's Motion for Relief from Stay and Abandonment and the debtor's Objection to the Motion.  At its conclusion, the parties sought permission to file the proposed findings and legal conclusions.  Those documents now have been submitted for the court's consideration.

The history of this bankruptcy is undisputed.  The debtor filed its petition for relief under chapter 11 on September 8, 2009, and has continued its dairy operation as debtor in possession.  Rabo holds the first priority secured claim on virtually all the assets and personal property of the debtor, in the amount on the petition date of not less than $3.2 million plus interest, fees, and expenses.  The junior secured creditor, North Central Cooperative, Inc. ("NCC"), holds a secured claim valued at $146,186.98.  Throughout this bankruptcy proceeding, the debtor filed motions requesting the use of cash collateral, and Rabo objected to the motions, asserting that it was not adequately protected.  Often they settled the issues and extended the terms under which cash collateral could be used.  After the debtor had been in chapter 11 more than a year without a confirmed Plan (the Plans filed June 28, 2010 and February 7, 2011 having been denied), Rabo filed a motion to prohibit the debtor's use of cash collateral.  After an evidentiary hearing, the court denied Rabo's motion and allowed the debtor to continue its attempt to rehabilitate its dairy business.  On March

10, 2011, Rabo filed a second motion to prohibit the use of cash collateral.  At the June 7, 2011 hearing, however, the court continued Rabo's motion to prohibit the debtor's further use of cash collateral pending this decision on Rabo's Motion for stay relief.

The Motion for Relief from Stay and Abandonment now before the court was filed on May 2, 2011.[1]  In that Motion, Rabo claimed entitlement to relief pursuant to 11 U.S.C. § 362(d)(1) and (2).[2]  It alleged first that the debtor was in breach of the Lease Assumption Agreement ("Agreement") between the debtor and Bekel Leasing, LLC, and that there were insufficient resources to fund the payment of rent under that Agreement.  For that reason, it argued, Rabo was not adequately protected and cause existed to terminate the automatic stay.  It further alleged that there was a cash loss for the month of March 2011 in the amount of $4,982.00, even without payment of the required rent under the Agreement, and an accounting accrual loss of $46,378.00 for the first three months of 2011.  Also, although the cow herd had increased, it still was 80 cows fewer than the number reported on January 1, 2011.  Rabo argued that the debtor lacked equity in the collateral when Rabo's secured claim was combined with any equity the junior creditor NCC may have.  It also concluded that the debtor could not effectively reorganize.

---

[1]  The automatic stay continued in effect pending the conclusion of a hearing and determination by the court. *See* 11 U.S.C. § 362(e).

[2]  Section 362(d) provides, in pertinent part:

> (d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay –
>
> > (1) for cause, including the lack of adequate protection of an interest in property of such party in interest; [or]
> >
> > (2) with respect to a stay of an act against property under subsection (a) of this section, if–
> >
> > > (A) the debtor does not have equity in such property; and
> > > (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362(d)(1), (2).

2

In its Proposed Findings of Fact and Conclusions of Law, filed seven weeks later, Rabo took note of improvements in the debtor's circumstances. It pointed out the debtor's larger herd (1,501 cows as of May 31, 2011), increased milk production, and higher monthly income. It acknowledged the debtor's cash gain of $38,509.00 for April 2011, but also its overall net cash loss of $<57,464.00> for the first four months of the calendar year. It commented, as well, that the debtor had paid Rabo for silage and haylage and for depreciation of collateral. In addition, it stated that "the value of the Collateral pledged to Rabo by New Schoonebeek has remained constant or slightly risen over the course of this proceeding" and that the debtor may even have maintained a little equity in the collateral pledged to its secured creditors. R. 274, ¶¶ 14, 42. Finally, Rabo realized the possibility of a change in the debtor's financial underpinning if an unnamed entity would choose to infuse up to $1,000,000.00 in new equity into the Dairy. Whether an agreement would be reached with that entity, whether milk prices would remain high, and whether the debtor could propose a confirmable plan by July 7, 2011 were questions Rabo raised. Rabo's Special Assets Manager, Howard Huisinga, testified at trial that it was his opinion that the debtor "could not maintain adequate cash flows to fund debt service over an extended period of time." R. 274 at 6.

Rabo stated several specific problems with the debtor's earlier proposed Amended Plan of Reorganization. First, the indebtedness to Rabo should be paid out over a substantially shorter period than 20 years, and at a substantially higher interest rate than 4.25%. In addition, the Plan must propose the immediate payment of unpaid administrative obligations under the Agreement. Rabo then argued that it met its burden of proof concerning the debtor's lack of equity: When the secured debt of Rabo and NCC are combined, the debtor does not have equity in the collateral in which they have a secured interest. It also asserted that the debtor did not meet its burden of proving that a successful reorganization of its affairs is reasonably possible, given the evidence presented and the stage of the case. Rabo contended that the debtor's failure to pay numerous months of administrative rent to Bekel Leasing constituted "cause" under § 362(d)(1).

3

The debtor disputed Rabo's arguments. First, it noted its ongoing adequate protection payments throughout the case and the consequent reduction of Rabo's claim from about $3.3 million to $2,567,124.79 at the time Rabo filed its Motion. It also pointed out that Rabo and the debtor had changed the terms of the adequate protection order by eliminating the $10,000 per month payment, increasing the interest rate to 5.25%, and requiring that the debtor add 20 cows per month to the herd. In addition, Rabo was assigned the claim of Bekel Leasing, and thereby obtained the Lease Assumption Agreement between Bekel Leasing and the debtor. That Agreement computed the amount of rent the debtor would pay to Bekel Leasing on the basis of Bekel Leasing's debt service. Because Rabo had acquired the Agreement only recently, on April 29, 2011, the debtor asserted, the rental amount owed to Rabo was unknown, and Rabo had not yet requested payment under the Agreement. The debtor argued that "'Cause' for relief from stay . . ., when it does not involve adequate protection payments, implies some abuse or malfeasance on the part of the debtor." R. 275 at 5 (citing *Matter of Lipply*, 56 B.R. 524, 527 (Bankr. N.D. Ind. 1986)). Rabo, however, did not allege any abuse or malfeasance; moreover, the debtor has paid Rabo more than $950,000 in adequate protection payments over the course of this chapter 11 case. *See id.* at 6.

The debtor also insisted that there is a reasonable possibility of a successful reorganization. It stated that NCC, a secured creditor, and one unsecured creditor asked court to allow debtor to be given the chance to file another amended Plan. With the increase in milk prices and the debtor's increased number of dairy cows in the herd (to 1,501), the debtor's future is positive. The debtor's owner, Harry Bekel, challenged the theory promoted by Mr. Huisinga at trial, that the value of the dairy cows should be obtained by using the auction sale values. Mr. Bekel claimed that liquidation valuation was appropriate only if the business was dissolving, and that replacement value was the proper method for valuing a reorganizing business. He valued the dairy herd at $2,384,650.00, based on the different values of cows at the first, second, and third lactation and the springers (pregnant cows). He testified that his recent purchase of cows for amounts between $1,500 and $1,800 reflected the replacement value of cows, and it is the appropriate

4

standard of valuation, he asserted. *See* R. 275 at 7-9 (citing *Associates Commercial Corp. v. Rash*, 520 U.S. 953, 962, 117 S. Ct. 1879, 138 L.Ed.2d 148 (1997)). The debtor added a new development to its financial situation: It said that there was an investor willing to contribute $1 million to the dairy operation. He insisted, therefore, that reorganization was possible.

The parties agree that Rabo's lien is valued at $2,567,124.79 and that NCC's lien is valued at $146,186.98. According to the debtor, the total value of Rabo's collateral, based on evidence at trial, is $2,984,650.00. It calculated that there was an equity cushion of $271,348.23. According to Rabo, the value of its collateral (1,477 cows) as of April 30, 2011, was $2,589,181.00. As of May 31, 2011 (after the number of cows was increased to 1,501), the total value increased to $2,631,263.00. By the court's calculation, based on the numbers provided by Rabo, then, on May 31, 2011, there was an equity cushion of $82,058.77.

## DISCUSSION

Relief from the stay is granted when the creditor requesting it presents cause for the relief, usually the lack of adequate protection, or when no equity exists in the property and the property is not necessary to an effective reorganization. *See* 11 U.S.C. § 362(d)(1), (2). The request must be in the form of a motion and must be pleaded with particularity. *See* Fed. R. Bankr. P. 9014, 9013; *In re White*, 409 B.R. 491, 493-94 (Bankr. N.D. Ind. 2009). The creditor bears the burden of demonstrating that the debtor holds no equity in the property, and the debtor has the burden of proof on all other issues. *See* 11 U.S.C. § 362(g). Even after a debtor establishes that the property is necessary to an effective reorganization, it must demonstrate, in addition, that there is "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 376, 108 S. Ct. 626, 633, 98 L.Ed.2d 740 (1988). When interpreting what counts as "within a reasonable time," courts have adopted a sliding scale that could be applied to a debtor to "prove the possibility of an effective reorganization in a

5

lift stay proceeding depending on the stage of the case." *In re Cadwell's Corners P'ship*, 174 B.R. 744, 759 (Bankr. N.D. Ill. 1994).

> [I]n the initial stages of a Chapter 11 proceeding, the debtor should be granted significant leeway in attempting to establish that successful reorganization is a reasonable possibility. However, as the case progresses, so too does the debtor's burden of proving that successful reorganization may be reasonably expected. Even at the later stages, a motion for relief from stay should not be turned into a confirmation hearing; that is not the debtor's burden of proof. Rather, the test should be viewed as a continuum with the scales tipping in favor of the debtor in the early stages and the burden of proof becoming greater in the later stages.

*Id.* (quoting *In re Ashgrove Apts. of DeKalb Cty., Ltd.*, 121 B.R. 752, 756 (Bankr. S.D. Ohio 1990)); *see also In re Brian Wise Trucking, Inc.*, 386 B.R. 215, 219 (Bankr. N.D. Ind. 2008) (acknowledging a sliding scale measurement, noting that the inquiry concerning successful reorganization within a reasonable time is highly fact-sensitive and must be made on a case-by-case basis). Whether to lift the stay is a decision committed to the discretion of the bankruptcy court. *See In re Boomgarden*, 780 F.2d 657, 660 (7th Cir. 1985).

In this case, Rabo has not proven that the debtor has no equity in the property. It has recognized that the debtor has slowly been digging itself out of a net cash loss. For the calendar year 2010, it reported an annual loss of $209,469.00. Monthly losses thereafter were reported in the debtor's financial reports:

| | |
|---|---|
| December 31, 2010, loss | <$516,488.00> |
| March 31, 2011, loss | <$95,973.00> |
| April 30, 2011, gain | $38,509.00 |

In addition, the debtor's milk production and, consequently, dairy income also have increased. Rabo admitted that there was some, albeit little, equity. Using only Rabo's calculations, on May 31, 2011, there was equity in the collateral of about $80,000.00. Therefore, the court finds that the secured creditor has not met its burden of proving a lack of equity, as it must under § 362(d)(2)(A).

Section 362(d)(2) is a two-pronged test, however. "[It] is designed to test whether the debtor is making sufficient progress towards a sufficiently realistic goal so that its efforts should be allowed to proceed." *In re Brian Wise Trucking, Inc.*, 386 B.R. at 218. The debtor has the burden of proving that the property is necessary to an effective reorganization and that a successful reorganization is reasonably

possible within a reasonable time. The debtor herein contended that, without the dairy facilities, there would be no place for the herd of 1,500 cows, and without the cows there would be no need for the dairy operation. There were no non-essential components suggested by the debtor; the dairy operation required the facilities and herd for its reorganization. When responding to whether the reorganization was reasonably possible within a reasonable time, however, the debtor asserted that, "[i]f [the debtor] can complete the agreement with the new investor, it has at least a reasonable chance to reorganize." R. 275 at 10.

Rabo does not challenge that the debtor's property is necessary to its reorganization. However, it does not believe that a successful reorganization of the debtor's dairy operation is reasonably possible within a reasonable time. Rabo focuses on the time factor. "[W]hile short term forecasts indicate potentially better financial results in the near term, there has been no assurance made to creditors or to the Court that long term financial results will be sufficient to fund or confirm a Plan of Reorganization pursuant to 11 U.S.C. § 1129." R. 274 at 9. Rabo is uncertain that the debtor would be able to increase the herd and thus its dairy income and profit consistently over time.[3] Howard Huisinga credibly opined that he doubted the debtor could continue positive cash flows to pay Rabo's debt over the long term.

In the view of the court, Mr. Huisinga's and Rabo's concerns are well-founded. The debtor has succeeded in large part because the price of milk has soared. Nevertheless, a reorganization cannot be based upon the fluctuating market of milk prices. The debtor's net gain has been achieved only recently. Its potential million-dollar investor is also new to the court and the secured creditor. Those elements may or may not be the "showing by New Schoonebeek that it can propose a Plan confirmable under the terms of 11 U.S.C. § 1129 over the objection of Rabo." *Id.* The debtor's future does not yet inspire confidence.

A debtor in process of reorganization "is given many temporary protections against the normal operation of the law," but a "reorganized debtor is supposed to stand on his own two feet." *Timbers*, 484

---

[3] Rabo also is concerned that the overfull manure lagoons on the real estate will overflow and damage the real estate, and that they are not in compliance with the maximum safe level, and that no remedy is in place. Harry Bekel testified that he himself was draining the lagoons. The court expects that a better plan will be used to remedy the difficult problem in the near future.

U.S. at 634.  As the age of the case grows, the debtor's burden of proof changes.  At first, the debtor must show that a successful reorganization is plausible; after some time (certainly after the exclusivity period), the debtor must demonstrate that a successful reorganization is probable.  However, as the case ages, the debtor's goals are clear, and progress has been made toward them, the successful reorganization must be assured.  *See In re Brian Wise Trucking, Inc.*, 386 B.R. at 219 (commending, following that concept developed in *Matter of Holly's Inc.*, 140 B.R. 643, 699-702 (Bankr. W.D. Mich. 1992)).  In this case, after the debtor has spent almost two years in a chapter 11 bankruptcy, the court determines that the debtor now has the higher burden of proving that a successful reorganization is probable and that its probability is greater with every passing day.[4]  Nevertheless, because there now is equity in the property, the court determines that Rabo has failed to prove that its Motion to lift the stay under § 362(d)(2) should be granted.

Rabo also argued that the Motion should be granted for "cause" pursuant to § 362(d)(1).  That section authorizes a court to lift the automatic stay for "cause," which includes, but is not limited to, the creditor's "lack of adequate protection of an interest in property."  *See Matter of Lipply*, 56 B.R. 524, 527 (Bankr. N.D. Ind. 1986) (stating that "'cause' is broader than 'adequate protection'").  "The purpose of § 362(d)(1) is to ensure that a secured creditor is not harmed while the debtor attempts to reorganize its affairs."  *In re Brian Wise Trucking, Inc.*, 386 B.R. at 218.  "Cause" is undefined; it has been described as an "intentionally broad and flexible concept that permits a bankruptcy court, as a court of equity, to respond to inherently fact-sensitive situations."  *In re Behanna*, 381 B.R. 631, 643 (Bankr. W.D. Pa. 2008) (citing *In re Texas State Optical, Inc.*, 188 B.R. 552, 556 (Bankr. E.D. Tex. 1995)).  In this court, "[c]reditors have been granted relief [for cause] where malfeasance by the debtor(s) has constituted an abuse of the bankruptcy process."  *Lipply*, 56 B.R. at 527.  In *Lipply*, Chief Judge Robert K. Rodibaugh presented examples of abuse of the bankruptcy process, including successive filings, inordinately lengthy bankruptcy cases with no plan

---

[4]  The court is well aware that the higher burden of proof placed on the debtor over time is not a proof that the plan can be confirmed.  Rather, the "focus is, relative to the date of filing, whether the debtor is moving meaningfully to propose a plan which . . . may be confirmable."  *In re Brian Wise Trucking, Inc.*, 386 B.R. at 219 (quoting *Matter of Holly's Inc.*, 140 B.R. 643, 700 n. 91(Bankr. W.D. Mich. 1992)).

proposed or confirmed, and interference with notice to secured creditors. *See id.* at 527-28. The Seventh Circuit also has given guidance, stating that relief from the stay is appropriate when "'equitable considerations weigh heavily in favor of the creditor and the debtor bears some responsibility for creating the problems.'" *International Business Machines v. Fernstrom Storage & Van Co. (In re Fernstrom Storage & Van Co.)*, 938 F.2d 731, 735 (7th Cir. 1991) (quoting *Matthews v. Rosene*, 739 F.2d 249, 251 (7th Cir. 1984)).[5] This instruction is consonant with the *Lipply* court requirement that "cause must be some form of malfeasance on the part of the debtor," and not just the "failure to make contractual payments during the bankruptcy case." *Lipply*, 56 B.R. at 528.

In this case, the debtor has been making adequate protection payments, covering depreciation of the collateral. *See* 11 U.S.C. § 361 (defining adequate protection as a cash payment or periodic cash payments to a secured creditor to the extent the debtor's use of it during the bankruptcy diminishes the value of the secured creditor's collateral). Rabo's "cause" for seeking relief from the automatic stay is not a lack of adequate protection, but rather a lack of payment of "numerous months of administrative rent to Bekel Leasing after an Order was entered by this Court providing for the payment of administrative rent." R. 274 at 13. The court considers whether the automatic stay can be lifted "for cause" under § 362(d)(1) for that reason.

Rabo provided some background concerning the administrative rent owed to Bekel Leasing and now transferred to Rabo. On April 29, 2011, Rabo filed its notice of "Transfer of Claim Other Than for Security" pursuant to Federal Rule of Bankruptcy Procedure 3001(e)(2). Attached was the "Assignment and

---

[5] Other courts offered different lists of examples that could constitute cause:

> Factors to consider in determining whether the automatic stay should be modified for cause include: (1) an interference with the bankruptcy; (2) good or bad faith of the debtor[;] (3) injury to the debtor and other creditors if the stay is modified; (4) injury to the movant if the stay is not modified; and (5) the relative portionality of the harms from modifying or continuing the stay.

*In re A Partners, LLC*, 344 B.R. 114, 127 (Bankr. E.D. Cal. 2006) (citations omitted); *see also In re Wright*, 300 B.R. 453, 466 (Bankr. N.D. Ill. 2003) (listing similar factors).

Assumption of Leases, Rights, Security Deposits and Contracts," an agreement between Bekel Leasing, LLC, and Rabo. By that contract, Bekel Leasing transferred to Rabo the pre-petition and post-petition administrative claims of Bekel Leasing and its lease of the debtor's real estate. Rabo noted that the Agreement required continuing monthly payments to be made, but that the debtor's last partial lease payment was made in July 2010. *See* R. 274 at 7; *see also* R. 241, Ex. B ("Rent Roll" listing post-petition lease invoice payments and nonpayments). Rabo contended that the debtor's default of its lease payments to Bekel Leasing constituted "cause" to lift the automatic stay pursuant to § 362(d)(1). The debtor responded that the administrative claim "is not nearly as high as Rabo claims" and that "Rabo's interest can be adequately protected and satisfied in a plan of reorganization." R. 275 at 4.

Following the precedents set in our circuit, the court finds that the debtor's failure to make contractual payments of rent during the bankruptcy case does not rise to the level of malfeasance or abuse to constitute "cause" under § 362(d)(1). As Judge Rodibaugh concluded in *Lipply*, "The term 'cause' as it is used in § 362(d)(1) requires more than simple nonpayment." *See Lipply*, 56 B.R. at 528. Particularly in circumstances in which there is an equity cushion and adequate protection has been paid, the court will not lift the automatic stay on that ground. *See In re Kerns*, 111 B.R. 777, 790 (S.D. Ind. 1990) (holding that bankruptcy court abused discretion in lifting stay, holding that failure to make payments, without more, is insufficient ground to remove the stay). In addition, the court found encouraging the debtor's comment, in its Findings of Fact and Conclusions of Law, that Rabo's lease interest can be adequately protected and addressed in the amended Plan of Reorganization due to be filed by the debtor on July 7, 2011.

In conclusion, Rabo has acknowledged that there appears to be some equity in the property at the moment, although it may be only a little and fleeting as milk prices fluctuate. Whether the debtor's business can be described as marginally profitable now and whether the prospects will continue to improve remain to be seen. The debtor has demonstrated that it was making regular adequate protection payments to Rabo and that the property was necessary to an effective reorganization, but it has not demonstrated that

there is "a reasonable possibility of a successful reorganization within a reasonable time," as the Supreme Court required. *See Timbers*, 484 U.S. at 376. The debtor still has a hard row to hoe. It must demonstrate, in its Amended Plan due July 7, 2011, that it has a realistic ability to reorganize reasonably soon, that it can continue to protect Rabo adequately, and that it can sustain and increase the growth in its equity. The parties' Findings of Facts and Conclusions of Law bring into sharp focus the issues to be addressed by the debtor. Therefore the court, in its discretion, determines that the automatic stay will remain in effect at this time.

<u>CONCLUSION</u>

For the reasons presented in this Memorandum of Decision, the court denies the "Motion of Rabo Agrifinance, Inc. for Relief from Stay and Abandonment of Debtor's Lease Interest in Real Estate and Ownership Interest in Farm Products and Equipment" pursuant to 11 U.S.C. § 362(d)(1) and (2).

SO ORDERED.

/s/ HARRY C. DEES, JR.
Harry C. Dees, Jr., Judge
United States Bankruptcy Court