UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| NEW SCHOONEBEEK DAIRY, LLC, | ) | CASE NO. 09-34327-hcd |
| Debtor. | ) | Chapter 11 |

### DEBTOR'S REVISED SECOND AMENDED PLAN OF REORGANIZATION DATED JUNE 30, 2011

### ARTICLE I
### SUMMARY

This Plan of Reorganization (the "Plan") under chapter 11 of the Bankruptcy Code (the "Code") proposes to pay creditors of New Schoonebeek Dairy, LLC (the "Debtor") from [specify sources of payment, such as an infusion of capital, loan proceeds, sale of assets, cash flow from operations, or future income].

This Plan provides for ___2___ classes of secured claims; ___1___ classes of unsecured claims; and ___1___ classes of equity security holders. Unsecured creditors holding allowed claims will receive distributions, which the proponent of this Plan has valued at approximately $.03 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

All creditors and equity security holders should refer to Articles III through VI of this Plan for information regarding the precise treatment of their claim. A disclosure statement that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01    Class 1.    All allowed claims entitled to priority under § 507 of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8)).

2.02    Class 2.    The claim of Rabo Agrifinance , to the extent allowed as a secured claim under § 506 of the Code.

2.03    Class 3.        The junior secured claim of North Central Co-op.

2.04    Class 4 .       All unsecured claims allowed under Section 502 of the Code.

2.05    Class 5.        Equity interests of the Debtor.

**ARTICLE III**
**TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,**
**U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS**

3.01    Unclassified Claims.  Under section §1123(a)(1), administrative expense claims, and priority tax claims are not in classes.

3.02    Administrative Expense Claims.   Each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the effective date of this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

3.03    Priority Tax Claims.  Each holder of a priority tax claim will be paid in full on the effective date of the plan.

3.04    United States Trustee Fees.  All fees required to be paid by 28 U.S.C. §1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

4.01    Claims and interests shall be treated as follows under this Plan:

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 1 - Priority Claims | Unimpaired | Class 1 is unimpaired by this Plan, and each holder of a Class 1 Priority Claim will be satisfied as agreed by the claimant in writing or paid in full, in cash, upon the later of the effective date of this Plan as defined in Article VII, or the date on which such claim is allowed by a final non-appealable order. |

| Class 2 – Secured Claim of Rabo Agrifinance, Inc. | Impaired | Rabo Agrifinance, Inc. made two loans in the debtor. The loans are referred to by the bank and the debtor as the "herd loan" including interest at the default rate was $2,650,502.97. The amount due on the "feed loan, including interest at the default rate, was $652,398.05. At the date of filing, the bank had expended $2,675.08 in legal fees and expenses. |
|---|---|---|
| | | The bank's total claim of $3,305,576.10 was secured by collateral with a value of $3,369,096.00, making it a fully secured creditor. |
| | | Under the cash collateral orders and adequate protection agreements that have been in place since the filing of this case, New Schoonebeek Dairy has paid to Rabo Agrifinance, as of January 1, 2011, funds sufficient to reduce the remaining balance to $2,547,124.79 to be dealt with through this plan of reorganization. Further reduction will take place as a result of additional payments while confirmation of this plan is pending. |
| | | The Debtor proposes to consolidate the remaining debt on both loans and the remaining debt would be secured by the same pre-petition collateral, plus post-petition acquisition of property of the same type and description. The balance would be paid by the debtor, with interest at 3.5% per annum, over 84 months. For cash flow purposes, the Debtor projects that monthly payments would not exceed $34,232.98. |
| | | In addition, the Debtor will satisfy the administrative claim of Bekel Leasing, which has been assigned to Rabo, and will purchase from Rabo all of its right title and interest in and to that 54.7 acre (more or less) parcel which constitutes the farm where the Debtor's dairy facilities are located on the following terms. Debtor will execute in favor of Rabo a new promissory note and mortgage in the principal sum of $3,750,000 which shall be payable over a term of 120 months with interest at the rate of $4% per annum. For cash flow purposes, the Debtor projects that the monthly payments on this obligation will not exceed $37,966.53. |

4

| Class 3 – Junior Secured Claim of North Central Co-op | Impaired | The secured claim of North Central Cooperative will be allowed as filed in the amount of $146,186.98 and paid over 36 months with interest at 4%. For cash flow purposes, the Debtor projects that the monthly payments will not exceed $4,316.02. |
|---|---|---|
| Class 4 - General Unsecured Creditors | Impaired | General unsecured creditors will be paid, through issuance of promissory notes from the debtor due on or before December 31, 2012, a sum equal to 3% of their allowed claims. |
| Class 5 - Equity Security Holders of the Debtor | Impaired | At the time of the petition in this case, Harry Bekel was the owner of 100% of the outstanding interest in New Schoonebeek Dairy, LLC (NSD). To help fund this Second Amended Plan of Reorganization, Bekel will convey 80% of his ownership interest in NSD to Bel Air Capital or its nominee in return for investment in NSD of $1,250,000 and pursuant to the terms of the Memorandum of Understanding entered into between NSD, Bekel and Bel Air Capital, which shall be fully binding and effective only upon the Effective Date of this Second Amended Plan of Reorganization |

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

5.01    Disputed Claim.  A disputed claim is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

5.02    Delay of Distribution on a Disputed Claim.  No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order.

5.03    Settlement of Disputed Claims.  The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

## ARTICLE VI
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

6.01    Assumed Executory Contracts and Unexpired Leases.

(a)    The Debtor REJECTS the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII:

> Lease with Bekel Leasing, but will instead purchase the subject property from Rabo Agrifinance in accord with the terms set out hereinabove.

(b)    The Debtor will be conclusively deemed to have assumed all executory contracts and/or unexpired leases not expressly rejected under Section 6.01(a) above, or before the effective date of this Plan.

Any proof of claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 30 days after the effective date of this Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

The Debtor will fund plan payments through dairy operations. The Debtor will continue to be partially owned, managed and operated by Harry Bekel. Mr. Bekel will, with funds provided by Bel Air Capital, increase the size of the herd to 1960 dairy cows, with the target of maintaining 1725 milking animals (88% of herd milking; 12% dry) in accord with good dairy practice.

Bekel will be paid a salary of $85,000 per year until all payments to unsecured creditors required by this plan have been completed.

## ARTICLE VIII
## GENERAL PROVISIONS

8.01    Definitions and Rules of Construction.  The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the following definitions:

> Debtor means "New Schoonebeek Dairy, LLC."
> Petition Date means September 8, 2009.

8.02    Effective Date of Plan. The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

8.03    Severability.  If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.04    Binding Effect.   The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

8.05    Captions.  The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.06    Controlling Effect.   Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Indiana govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE IX
## DISCHARGE

9.01.   Discharge.  On the confirmation date of this Plan, the debtor will be discharged from any debt that arose before confirmation of this Plan, subject to the occurrence of the effective date, to the extent specified in § 1141(d)(1)(A) of the Code, except that the Debtor will not be discharged of any debt: (i) imposed by this Plan; (ii) of a kind specified in § 1141(d)(6)(A) if a timely complaint was filed in accordance with Rule 4007(c) of the Federal Rules of Bankruptcy Procedure; or (iii) of a kind specified in § 1141(d)(6)(B).

Respectfully submitted,
New Schoonebeek Dairy, LLC

By:
Harry Bekel

7

R. William Jonas, Jr. (#5025-71)
*Attorney for Debtor*
Hammerschmidt, Amaral & Jonas
137 N. Michigan St.
South Bend, IN 46601